LOVELL DRESSEL CO., INC. *v.* UNITED STATES (No. 4035)[1]

United States Court of Customs and Patent Appeals, May 29, 1937

*Barnes, Richardson & Halstead (Samuel M. Richardson* of counsel) for appellant. *Joseph R. Jackson,* Assistant Attorney General *(Samuel D. Spector,* special attorney, of counsel), for the United States.

[Oral argument April 6, 1937, by Mr. Richardson and Mr. Spector]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by the importer from a judgment of the United States Customs Court, Third Division, reversing the judgment of a single judge of that court sitting in reappraisement, and remanding the case with instructions to the single judge to dismiss the same. Two entries are involved, the cases having been consolidated for trial.

The merchandise consists of gauge glasses imported from England, it being of the same general character as that involved in the case of *Jenkins Brothers* v. *United States* (suit 4036), decided concurrently herewith, 25 C. C. P. A. (Customs) 90, T. D. 49093. The principal use of the glasses is on ship, railway and other steam engines for gauging water and oil. The entries were made at the port of New York at the list unit prices less discounts of 65, 2½, and 5 per centum which seem to have been the prices actually paid by the importer. The local appraiser appraised the merchandise at the list prices less only 30 per centum discount, thus advancing the dutiable value over 100 per centum. The importer appealed to reappraisement and the single

judge held the entered value to be the correct dutiable value, his appraisal being upon the basis of foreign value, which is conceded to be the correct basis. Upon appeal by the Government the appellate division reversed the judgment of the single judge, holding, in effect, that it was not possible to determine from the record presented either the usual wholesale quantity or the usual discounts allowed to purchasers in the English market. While the appellate division did not approve the dutiable value found by the local appraiser, the effect of its decision is to sustain such value, so far as this case is concerned, because of the failure of the importer "to establish the legal elements necessary to an appraisement," the rule announced by this court in the cases of *United States* v. *Gane & Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264, and *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, T. D. 48333, being followed.

While the record in the case is not voluminous, it is exceedingly complicated by reason of the large number of sales shown in widely varying quantities and at widely varying discounts. It consists largely of an affidavit of Mr. Lansdale Hammill, the managing director of the exporting company, together with certain exhibits thereto, offered in evidence on behalf of the importer, and two reports of special agents, with exhibits thereto, offered in evidence by the Government. Both the single judge and the appellate division in their decisions analyzed the evidence with care, and since this court is limited in reappraisement proceedings to the consideration of questions of law only, it is not essential that we here set forth in detail our independent review of the evidence upon questions of fact. The single judge concluded from the record and in the light of a long prior reappraisement made by him of similar merchandise that "an amount exceeding 50 dozen pieces per order reasonably constitutes a wholesale quantity," and adopted what he found to be the approximate average of established discounts. In the course of his decision the single judge recited the following findings:

Attached to Exhibit 1 [Mr. Hammill's affidavit] are copies of invoices of these tubes showing discounts of 65 per centum, 2½ per centum, and 5 per centum, and many other discounts many of which are in excess of those in question in the reappraisements at bar. Lower discounts appear to apply to small quantities of say 3, 6, or 12 tubes (apparently retail quantities). On a sale to a railroad of 2,160 tubes we find a discount of 75 per centum; on another of 3,600 tubes a discount of 77½ per centum; on one of 144 tubes of 50 per centum; on one of 1,130 and 565 tubes there is a discount of 87½ per centum; on one invoice of 24, 48, 48, 72, and 72 tubes, 40 per centum; on one of 800 and 1,200 tubes, 80 per centum; on one of 2,000 tubes 87½ per centum; and on numerous invoices of comparatively small quantities, discounts of 40 per centum, 30 per centum, 20 per centum, 22½ per centum, 27½ per centum; and on one of 860 tubes, 87½ per centum. On numerous sales in England discounts do not appear on the list of invoices, but these are of small quantities of 2-, 3-, 6-, 12-, and 36-gauge glasses.

Exhibit L. H. 6 attached to Exhibit 1 summarizes the wholesale and retail transactions of the exporter during March, April, and May 1934. One group of ten sales shows discounts of 67½ per centum to 90 per centum. The second group of sixteen sales shows discounts ranging from 10 per centum to 62½ per centum. According to plaintiff's affidavit, Exhibit 1, the larger discounts of 67½ per centum to 90 per centum apply to sales of tubes totalling 195,956 feet; while the smaller discounts ranging from 10 per centum to 62½ per centum apply to sales of only 54,836 feet. It is evident that the larger the quantity sold the greater the discount, and that the bulk of the sales, so far as quantities of tubes sold are concerned, is of large or wholesale quantities.

It appears from the affidavit, Exhibit 1, that in computing these discounts "no account has been taken of the discount of 2½ percent for cash payments within a stated period."

In rebuttal we have defendant's Exhibits 4 and 5, being special agents' reports.

It appears from Exhibit 4 that the special agent on July 26, 1934, interviewed Mr. L. Hammill, a director of the exporters, and Mrs. Rebecca Shepperd, the secretary, who placed their firm's records at his disposal, and supplied him with information.

The special agent lists sales in England of 9 dozen tubes, less 30 per centum; 2 dozen, 30 per centum; 3 dozen, 40 per centum; 6 dozen, 30 per centum; 18 tubes, less 40 per centum (this involved an expenditure of only 9 shillings and 11 pence); 60 tubes, less 30 per centum; 1,860 tubes, less 87½ per centum. He also appends a list of discounts ranging from 20 per centum on 21 invoices, totalling 355 pieces, to 87½ per centum on 25 invoices totalling 43,266 pieces. Similar discounts also applied on sales of 1 piece, 20 per centum; 6 pieces, 25 per centum; 1 piece, 30 per centum; 689 pieces 33⅓ per centum; 6 pieces, 35 per centum; 1 piece 40 per centum; 4 pieces, 45 per centum; 2 pieces, 50 per centum; 144 pieces, 55 per centum; 1 piece 60 per centum; 600 pieces, 62½ per centum; 144 pieces, 65 per centum; 2 pieces, 70 per centum; 60 pieces, 72½ per centum; 12 pieces, 75 per centum; 12 pieces, 77½ per centum; 72 pieces, 80 per centum; 24 pieces, 82½ per centum; and, finally, on a sale of only 12 pieces, a discount of 87½ per centum.

It would seem, therefore, from this report that the large discounts did not always apply to the quantity sold.

It is further indicated in the summary attached to the report, Exhibit 4, that the small discount of 20 per centum attached to an average number of all invoices amounting to 16.90. *Whereas on an average number of invoices amounting to 1,730.64 the high discount of 87½ per centum applied.*

The report indicates at page 4 that the discounts are fixed according to "the status of the customer and the competition which must be met." This indicates that the large discounts depend somewhat upon the customer rather than on the quantities involved, and "that there was no hard and fast rule for them to go by in fixing discounts to be allowed."

### The appellate division said:

The affidavit of Mr. Hammill, Exhibit 1 in the case at bar, groups the sales of his company as follows:

(1) Sales to users.

(2) Sales to retailers who in turn sell at retail.

(3) Sales to wholesalers.

He arrives at this grouping upon a computation of the amount and value of merchandise sold. He groups as wholesalers only those who buy in large quantities. He further states that included with the wholesalers are railroad companies and the Government with whom he makes or has made contracts. We have not

been furnished any data concerning the method of awarding the contracts nor were such contracts produced in evidence. We are of the opinion that invoices, had any been produced, or periodical shipments made under the contracts would not of themselves establish the usual wholesale quantity.

There is not a single word of testimony in the entire record as to what constitutes a usual wholesale quantity in the foreign market. If this court is to determine that question it must be found from either the invoices or the price list in evidence. Attached to Exhibit 1 is an invoice of the merchandise involved, which covers upward of 1,200 separate items, the total value of which was accorded the rates of discount of 65 per centum, 2½ per centum, and 5 per centum. Other invoices are appended to this exhibit covering merchandise shipped to different parts of Great Britain, the country of exportation, ranging in quantities from one article only to as high as 25,000 articles. We therefore conclude that it is not possible from such records to determine what constitutes the usual wholesale quantity.

The price list makes no mention of discount. It gives per dozen prices of tubes ranging in length from 8 inches to 30 inches and in thirteen different diameters for each length, ranging from ½-inch to 1½ inches. In other words there are listed twenty-three times, thirteen various priced items in this price list group for which a per dozen price is stated and upon an invoice of which merchandise discounts are given "according to the status of the customer and the competition which must be met." The learned judge below stated:

The report indicates at page 4 that the discounts are fixed according to "the status of the customer and the competition which must be met." This indicates that the large discounts depend somewhat upon the customer rather than on the quantities involved, and "that there was no hard and fast rule for them to go by in fixing discounts to be allowed."

The price list disclosed that the value of these gauge glasses depends upon the length and diameter of each. There is no proof in the record as to the basis adopted for awarding discounts. The usual wholesale quantity cannot be determined, as seems to have been the idea of the special agent, as indicated in Exhibit 5, by finding the greatest number of sales granted a particular discount, without proof that the most frequently given discount attached to sales in the usual wholesale quantity. In his report the special agent tabulates the discount awarded on 436 different invoices. He shows that out of that number 192 carried a discount of 30 per centum. This discount was the rate adopted by the appraiser. In the absence of proof that these 192 sales were made in the usual wholesale quantities it cannot be said that 30 per centum is the discount that pertains to sales in the usual wholesale quantity, nor is there sufficient proof in the record to establish the discount to be allowed on the usual wholesale quantity. Not being able to find any majority of sales in the usual wholesale quantity, we are of the opinion that the proof is deficient in that matter.

From our own independent examination and analysis of the evidence, we are constrained to concur in the holding of the appellate division to the effect that there is no substantial evidence from which either the usual wholesale quantity offered to purchasers in England, or the price at which same is freely offered to all purchasers in the ordinary course of trade can satisfactorily be determined. The affidavit of Mr. Hammill discloses commendable candor in showing fully the customs and practices incident to the business of his company and the frankness of importer's counsel in presenting the issues to this

court also deserves, and has, our commendation. It is obvious from the whole record in the case that the company does business in England under highly competitive conditions and that there is no uniformity either as to quantities sold or as to the discounts allowed purchasers. Regrettable as it may be, therefore, not to be able to find the legal elements essential to determine these questions when there has been such a full and candid disclosure of facts, we find ourselves unable to render any judgment contrary to that appealed from. It may be said that the evidence in this case is confined solely to the course of business of the exporting firm, nothing having been offered as to the customs and practices of other companies engaged in similar trade.

It seems to be the theory of appellant that the appellate division held the affidavit of Mr. Hammill to be incompetent and not to constitute proof proper to be considered by the court, and it is assigned as error that the division so held without there having been any assignment of error directed thereto by the Government in its appeal from the judgment of the single judge.

We do not so understand the division's decision. Upon the contrary, it was there said:

So far as the affidavit purports to establish facts as to the deponent's occupation, identification of price lists, invoices of sales made, together with such price lists and invoices, it is competent. The statement of the deponent that certain customers were favored customers is also competent; likewise his statement in paragraph 9 to the effect that his company was ready and willing to sell to any and all customers, etc., at the prices and under the discounts stated in the instant invoices.

The remaining testimony consisted of the identification of samples of tubing and certain statements as to their use, to which objection was made, which objection in our opinion should have been sustained.

We think there was no error in this holding and it seems obvious from that part of the decision quoted, *supra*, that the affidavit received due consideration upon all the pertinent factual and legal questions involved.

The judgment of the United States Customs Court is *affirmed*.